Thank you very much. If it pleases the court, my name is Kenneth P. Tableman. I'm appearing on behalf of Mr. White, who is the appellant, and I would like to reserve four minutes for lots of different issues. I thought I would devote most of my time this morning to discussing the sufficiency of the evidence issue concerning the conviction for violation of 18 U.S.C. Section 924C, possession of a firearm in frivolous drug trafficking offense. This type of issue is a fact-specific issue that turns on the facts of each particular case. There is a statement by this court in Mackey setting forth a number of factors that are non-exclusive factors. The importance of the issue for my client is that, of course, the resulting conviction resulted in a mandatory minimum sentence of five years in prison. In this case, there was never any discussion of a firearm or the use of a firearm. There's never any sighting of him carrying a firearm. The firearm at issue in this case was an unloaded semi-automatic pistol that was located in a locked safe, a two-compartment safe, and the other compartment in the safe was a sizable quantity of cash and some controlled substances. A key factor that the courts have looked at in analyzing this type of issue for sufficiency is the accessibility and availability of the firearm to the drug trafficker. I would submit to accessible in a setting where there's no evidence of drug trafficking at the premises. This, unlike many of the other reported cases, this is not a stash house or a drug house where people are coming continually to buy drugs. There's no evidence of manufacturing of drugs, of weighing of drugs, of packaging of drugs. It's not a situation where there's numerous loaded firearms around the premises outside of containers that are accessible to the particular defendant. Counsel, Judge Guy, let me interrupt a moment. Yes, Your Honor. This was an issue that was submitted to the jury, wasn't it? Yes, it was. And so don't we really look at it whether any reasonable jury from the evidence of the record could have found that this was used in furtherance of drug trafficking? Yes, Your Honor. That's kind of a tough standard under these circumstances, isn't it? At first glance, I would agree with you that it's a tough standard. But if you look at the specific, and we're asking this court to performance review function, and look at what was presented to the jury and determine whether they could reasonably infer that. And I would submit that in the setting of this case, it's very much like the Palmer case that I cited in the brief where the gentleman has a gun that's found in a safe that's locked, that's attached to drugs, and the court there said that that wasn't enough to support the conviction. Why is that? There has to be a connection between the gun and the drug crime. And in this particular case, with all the evidence of the case, there's some telephone calls. We see one or two people observed coming to the premises at times removed from when this gun is And I think crucially, the gun is unloaded in a closed safe. Does it matter? It's right next to the large amount of cash? It could be drug proceeds. Well, that is a circumstance, obviously. Well, we're looking at circumstantial evidence, and circumstantial evidence is sufficient to convict, is it not? If the court has held many times that circumstantial evidence will support a conviction, but the court has to look at what is the circumstance and what is the inference that we're Whether a reasonable juror could draw a reasonable inference based upon the circumstantial evidence. Right. That persuades them beyond a reasonable doubt that this gun was possessed. A reasonable juror. Right. Sure. So what's wrong with drawing the inference that the gun and the money, the money is drug proceeds, are together, tied together? There's, the gun is found in a closed safe, unloaded, in a room that admittedly appears to be the bedroom of my client. There's four people present at the premises, and no one claims ownership of the safe. Is it his gun? He denies that it's his gun. There's money? He admits it's his money. Oh, it's his money. Okay, so his money's there with somebody else's gun, maybe, huh? Well, that's, the jury had before it. Even if somebody owned the, even if someone else owned the gun, he would have constructive possession of the weapon, since he's got access to the safe that's got his money in it, right? The step you have to take is to establish that he knew that the gun was in the safe. Oh, okay. And that he intended to use that gun in some fashion, not use the gun, but he intended to possess that gun in connection with his drug trafficking. I mean, I think even jurors know that drug dealers that have a lot of cash on hand usually have weapons on hand, too, to protect their cash from getting stolen. I mean, it's just a natural connection, right? Well, there's frequent, yes, I think jurors know that from their common knowledge, and there's frequent testimony about that by officers as experts. And at the same time, in the case law and in the discussion and in the statute, mere possession of the gun is not enough. And you have to show some connection between the gun and the crime. And there's really not ever seen with the gun, the gun's not discussed at any particular time. This is not a place where he's transacting the drug crime. All it is is a safe that has money and drugs in it. And I've cited some cases where we have drug dealers that have unloaded guns in fairly close proximity that's held not to be sufficient for a juror to make that conclusion. Why is that? Because you're talking about a conviction, and you've got to tie it together somehow. And there has to be more than just like mere presence of the gun. There has to be something. What ties this gun to Mr. White? I mean, what are the proofs? It's in the safe, and he says it's not my gun. I don't know how it got there. It's not too different than cases. The safe was in his bedroom, is that it? It was in his bedroom, yes. And he has access to the safe. He doesn't deny that he had access, right? Well. It's his safe. He admitted the drugs and the money. Yeah, it was his safe. And the money was there with the drugs in his bedroom safe. Yes. And it's indisputed that drug crimes were, that he was associated with drug trafficking or some sort of drug crimes. Why isn't all that enough for the gun to be associated, to sustain the conviction for the gun charge? Well, again, I'm going to focus on it's unloaded and it's not accessible. It's an unloaded gun in a closed safe, in a location that is not a situs of drug trafficking. So that's, I think, the distinction that I would make. If you look at all the cases that the court has decided, and almost always we're looking at loaded guns and circumstances that indicate that the drug trade is going on in that location. Informants have come in and made buys at the location. Other drugs are around, packaging materials are around. So I'm just arguing to the court there's a line somewhere to draw. Of course, there are lots of search and seizure cases that say that people who are involved with drugs are likely to keep evidence in the form of money and firearms in their personal residences. I mean, that's true, but we're talking about a specific statute, the specific language of the statute, and possession in furtherance of. As the court described in Mackey, there's a universe of cases where possession alone may not suffice to support the conviction under the language of the statute. So we're asking the court to carefully examine the facts in this case and decide whether in the court's judgment they're sufficient to support this conviction for this serious crime. Thank you. May it please the court. Andrew Goetz for the United States. The Mackey factors supported the jury's verdict on the 924C count here. The first factor, the proximity of the gun to the drugs and the cash, they were quite close. They were in the same safe next to each other. Yes, there was a partition, but when you opened the safe, you could access both of them at the same time without any further effort. This case thus parallels Volkmann and Mendezalbal, both of which we cited in our brief, both of which involved similar circumstances where there was a locked safe that included both drugs and cash. The defendant here admitted it was his safe. It was definitely his bedroom. When the agents searched the house, he came out of it completely naked. He had been sleeping, went back in the bedroom to put clothes on. All of his things were in the bedroom. He not only admitted that the safe was his, he knew how much cash was in there, how many pills were in there. Almost exactly, he said 900 pills or something like 898 pills. So he knew quite well what was in the safe. And although he denied knowing the gun was there, his explanation was incredible on its face, and the jury was entitled to disbelieve that. Why would somebody plant a crime gun in his locked safe in his bedroom  if most people aren't dishonest enough to plant a gun but honest enough to say, hey, no, I'm not going to touch that cash that's sitting right there. So the jury was entitled to view that evidence with common sense. And although the appellant claims that the gun was unloaded, and that's technically correct, there was a loaded magazine sitting directly underneath the gun. That loaded magazine was not only loaded, it was an extended magazine with 25 rounds in it. So yes, it was technically unloaded, but the magazine is sitting right there. In that sense, this case resembles Guadarrama. It's a case we've cited in our brief where the gun there was also unloaded, but it was sitting on top of a box of ammunition. This is also a- It wasn't a pistol where he would have to load individual rounds into the chamber. He just would have to push the magazine into the gun. That's correct, Judge Clay. It would not be difficult to put the ammunition into the gun here. It was not a revolver. It was also a crime gun. The picture we provided in our brief and in the appendix shows that somebody actually took a drill and punched out the serial number with holes. And that's important because when somebody expects to use a gun in committing a crime, they want to be able to discard it afterwards. And if they discard it, they don't want it to be traced back to them. So by obliterating the serial number, or at least using a gun with an obliterated serial number, it makes it easier for him to use the gun in committing the crime because that way it makes it tougher for law enforcement, the police, to figure out whose gun that was originally and trace it to him. He also wasn't a small-time drug dealer. He wasn't the largest drug dealer in the history of Detroit, but 10,000 pills over a year is a significant amount of drugs, and he had 900 of those pills still in his safe. $25,000 in cash is a good quantity of cash. Contrary to his argument on appeal, he was actually conducting drug trafficking from his house. Now we don't know if they were conducting it from his room, but the wiretaps show that he was conducting drug trafficking from his house. They showed him talking about meeting suppliers there and I think actually meeting a supplier at that very house. I'm happy to answer any further questions on this issue. Judge Guy? I don't have any, thank you. I don't have any questions on the other issues either. I would like to tie up one loose end, though, Judge Griffin. In his reply brief, he argues for the first time that this court should perhaps reconsider or overrule its cases holding that plea negotiations should be automatically excluded under the Speedy Trial Act. I think we all know we can't, a panel of this court cannot overrule a published decision of our court that only our en banc court can do that or the Supreme Court can do it, so I think that's pretty well settled. That is settled, Judge Griffin. I just want to make an additional point that he raised it for the first time in his reply brief, so even for purposes of en banc review, it would be waived here because it wasn't raised in his opening brief. So, unless the court has any further questions, I would reserve the remainder of my time. All right. Thank you for appearing. I did want to review with you the facts of the Volkman case as well as the Cobb case and the Menzibal case that were cited in Volkman. Volkman case is a case where the gun was found in a safe, but it's a pill mill case where the whole premises was rife with the distribution of opiates and Oxycontins and all sorts of narcotic drugs by Dr. Volkman and where there were dozens or hundreds of drug addicts coming there at all times. Indisputably, the place was the very definition of a premises where drug trafficking was going on continually. The Cobb's case is a case where there was an undercover purchase made at the residence and the search that followed was very shortly done thereafter. There were multiple guns. There were all kinds of quantities of drugs. And I think the distinguishing factor there again is this was the main site for the drug crime. The Menzibal case, the gun was loaded in the safe. So those are the distinguishing factors that I would say made those cases different than Mr. White's case. And I'd ask the Court again to carefully review this issue as well as the others since we've raised our brief on behalf of my client. Thank you very much. Mr. Tableman, I see you were appointed pursuant to the Criminal Justice Act, so the Court certainly would like to thank you for taking this case. It was a service to the Court and our system of justice, so thank you for that. The case is submitted. The Court may call the next case.